# RAMON VALDES

*v.*

# CENTRAL ALTAGRACIA, INCORPORATED, AND NEVERS & CALLAGHAN,

Consolidated with

## CENTRAL ALTAGRACIA, INCORPORATED,

*v.*

## RAMON VALDES AND NEVERS & CALLAGHAN.

---

Mayaguez, Equity, Nos. 564 and 565.

1. A chattel mortgage as such is unknown to the laws of Porto Rico.
2. A corporation conducting a sugar factory, becoming involved, borrowed money, and, because of the lack of a chattel mortgage law in Porto Rico, gave what was in terms an outright bill of sale of its lease rights, machinery, and chattels to the lender who immediately gave

### Valdes v. Central Altagracia.

to the vendor a "Venta con pacto de retro," or a conditional sale of the same property, and it then elected the lender its president and he went into possession of, and took charge of the plant with a view to repaying himself as per the terms of this conditional sale. The venture proved unprofitable and no payment could be made. These instruments, or conveyances, between the parties, were not recorded anywhere, and the general creditors had no knowledge of them. Finally a general creditor brought suit and attached the corporation's interest in, and obtained a lien on the plant. Then the lender of the money attempted to take possession of the entire concern under his bill of sale. Held: That, no matter what the parties called it, the facts showed the transaction between them to be the borrowing of money on the plant, and the giving of the same as security therefor, and held further, that this amounted to an equitable mortgage or lien that the lender was entitled to foreclose, but held further, that his rights were junior to those of creditors who secured attachments or execution liens on the property before the lender took possession thereof.

3. The law favors the diligent, and where a lender of money fails to place the instruments that evidence the loan, on record, or fails to take possession of the property he buys, but permits the former owner to still appear to his creditors as owning the property, such lender is estopped, and attaching or execution creditors who anticipated him in time in getting their liens against the property, take precedence.

4. Where a concern has been in the hands of a receiver for more than a year, and the further holding of the property is resulting in loss to all concerned, and the issues are made up sufficiently for the court to see the exact contentions of the parties, it can, in the interest of justice, proceed with a trial on the merits, and need not delay to take depositions of witnesses whose testimony it can plainly see would be ineffectual.

### Opinion filed September 25, 1909.

---

Messrs. *Martin Travieso, Jr.,* and *José de Diego,* attorneys for Valdes.

Messrs. *N. B. K. Pettingill* and *F. L. Cornwell,* attorneys for Central Altagracia.

Valdes v. Central Altagracia.

*Messrs. F. H. Dexter* and *B. J. Horton*, attorneys for Nevers & Callaghan.

RODEY, Judge, delivered the following opinion:

The above two suits, which were consolidated for the purposes of a receivership, and for the purposes of trial, are bills in equity, under which a receiver was appointed, and concern the property known as the "Altagracia Sugar Central" near Mayaguez, on this island. The property previous to January, 1905, consisted of a relatively small sugar mill of a somewhat ancient pattern, and 22 cuerdas of ground, upon which it was situated, with perhaps some other personal property. At that time it belonged to a man by the name of Joaquin Sanchez de Larragoiti, who was then a resident of the city of Paris, France. On the 18th of January, 1905, this Mr. Sanchez de Larragoiti entered into a private contract or lease of said premises with one Salvador Castello, running for a period of ten years thereafter. Under this contract, Castello was to have the right to continue said sugar central for the manufacture of sugar, and to put in any new machinery he saw fit, and was to pay his lessor 25% of the profits accruing therefrom, and also had the right as to the remaining 75% of the profits to interest anyone he saw fit with himself therein, as he might deem convenient.

About the 6th of June following the date of this contract, the parties extended its term for a period of ten additional years, so as to make it a twenty-year term in all. A few days later, on July 1st, 1905, this lessee Castello entered into a contract with one Frederick L. Cornwell, and transferred all his rights in this lease to him, as trustee, for the benefit of a corporation

to be immediately organized, and to be known as the Central Altagracia, Incorporated. Castello was to have certain stock and a certain official position in this new concern as a consideration for the transfer. Mr. Cornwell, aided by Mr. N. B. K. Pettingill, then became chief promoter of the concern, and immediately organized under the laws of the state of Maine a corporation as intended, and transferred all of the rights that had thus been transferred to Cornwell in trust to the new corporation, which immediately proceeded to business, and, within three years next following, installed upon said 22 acres of ground a large amount of new sugar machinery and other improvements said to have cost with, freight and installing charges added, quite or over $200,000. This corporation proceeded with its business as a sugar grinding central with more or less success, and with more or less trouble with its stockholders, colonos and creditors. See Wilson v. Central Altagracia, 2 Porto Rico Fed. Rep. 429, and Central Altagracia v. Javierre & Gil, 3 Porto Rico Fed. Rep. 256, and Nevers & Callaghan v. Central Altagracia, 3 Porto Rico Fed. Rep. 496; also equity suit, docket No. 579, San Juan Division, Larragoiti Heirs v. Castello and Central Altagracia, and equity suit No. 203, Mayaguez Division, Castello et al. v. Central Altagracia.

On April 11, 1907, owing to the failure of Ceballos & Company, and for other reasons, the concern became somewhat involved financially, and was forced to borrow from the complainant Ramon Valdes, in suit 564 of the caption, $35,000, for which it gave him some sort of an instrument in the nature of a "Venta con Pacto de Retro;" but later, in October of that same year, was forced to borrow from him an additional sum of $30,000, making the whole debt $65,000. It seems that

Valdes v. Central Altagracia.

this money was needed to finish putting in the machinery as planned. At the time of giving this additional money to the central, which occurred in the city of New York, the two transactions were merged, and some very peculiar instruments were entered into between the parties in the office of Curtis, Mallet-Prevost & Colt, who, it seems, acted as attorneys for all the parties. First, what purports to be an absolute sale of the entire rights that the central Altagracia had in and to the sugar mill and plant was executed to Valdes, and he in turn immediately made a sale back to the corporation of the same property. Then the corporation elected Valdes its president and manager, etc. He had been vice president and a director previous to that time since first lending it money, and he immediately took charge of the plant for the ensuing grinding season, with a view to paying himself back in instalments, as was stipulated in the contracts between the parties, but the property was, according to the instruments mentioned, to belong to him absolutely until he was thus repaid, etc.

It was fully in evidence on the trial that from the time Valdes first advanced any money to the central he took considerable interest in its affairs. During his connection with the concern he personally purchased, often at heavy discounts it is true, large amounts of pressing debts and claims against it, which it is contended, because of his then fiduciary relation to the concern, he cannot now collect the face value of, but for which he can now only collect the amount he actually paid therefor with interest. It is also in evidence that he loaned Mr., Cornwell $7,500, with some of the capital stock of the central as security, and that he afterwards was forced to take the stock either on account of, or in satisfaction of the debt. It is further in evidence that

Valdes v. Central Altagracia.

he received an additional 150 shares of the capital stock of the central. He contends that this was given him in consideration of his work in, and in the nature of a commission for purchasing the machinery for the plant, in addition to a salary of $3,000 per annum which he was to have, although he collected only $500 for two months' wages. Counsel for the central contends that not only were his position as director and vice president, and later his position as president, as well as the salary and the 150 shares of the capital stock, given him as a consideration for making this advance or loan to the central, but that such were the terms which Mr. Valdes demanded and increased from time to time, and that therefore, no matter what the instruments executed between the parties were, or can be called, or the parties were forced to call them, owing to the peculiar situation and exigencies of the case, and the absence of a chattel mortgage law in Porto Rico, still the transaction is and was essentially a loan from Valdes to the central, for which not only the then officers, but the stockholders by a meeting held, were willing he should have. The central, therefore, contends, that Mr. Valdes has been the recipient of usurious contracts and interest, and that in this sort of a suit the central should have all such legal advantage of such fact as the law gives it.

It developed also that Mr. Valdes, while thus managing the property, personally and necessarily expended some $14,000 or more, over and above the $65,000 mentioned in the merged advances which he made to the concern. The central contends that, at any rate as to all the debts which he purchased, and as to all advances which he thus or otherwise made over and above the $65,000, he is purely and simply a general creditor therefor, and as to those debts and claims that he purchased for

Valdes v. Central Altagracia.

less than face value the central is entitled to the benefit of such reduced purchase price.

During the trial, Mr. Valdes introduced evidence tending to show that outside of his stock purchases he has advanced nearly $94,000 to the central, including the $65,000 represented by the contracts made in New York. An examination of this account shows it to be, to a considerable extent, made up of interest and other items that he may or may not be entitled to recover, as we shall hereafter find.

Valdes apparently did his best in and about the management of the plant, and in and about purchasing and installing machinery, but the season being then so far advanced as that, for one cause or another, little, if any, success attended the enterprise, and, in consequence, the payments to him and to all other creditors were defaulted. During this management of Valdes of the sugar mill, considerable friction arose between the promoters and former managers and chief owners, Messrs. Pettingill and Cornwell, on the one side, and Mr. Valdes on the other, and so bitter did this become as that on June 2d, 1908, Valdes, claiming to be the owner of all of the rights of this corporation in and to this sugar mill and plant, filed a suit at law, No. 563 on the docket, to eject the corporation entirely therefrom, and to install himself as the absolute owner of all the corporation's rights therein even as against the corporation's creditors. The basis for this suit of his was the absolute sale of the property so alleged to have been made to him in New York in October, 1907, which instrument was then presumably for the first time brought to the knowledge of others than the actual parties thereto and their attorneys.

Valdes immediately followed this suit at law with a petition

Valdes v. Central Altagracia.

in equity for a receiver, which was filed as suit No. 564, as mentioned in the caption. Immediately thereafter, and on the said same day, June 2d, 1908, Messrs. Pettingill and Cornwell as representing the Central Altagracia, Incorporated, came in, and filed suit No. 565, as mentioned in the caption, also petitioning for the appointment of a receiver for the plant and property, and alleging many things with reference to the action and management of Valdes concerning the property while in his charge, etc. A few days later, and after several hearings were had, the court consolidated the two equity suits, Nos. 564 and 565, and appointed a temporary receiver of the property. A few months later, however, and after much additional litigation had transvened in the matter, and after debts had been created, this temporary receiver was discharged as such, and appointed permanent receiver with power to borrow money and proceed with the management of the property as a going concern, in an effort to enable it to pay its debts, and give the court an opportunity to ascertain the rights of the respective parties. All this procedure was largely at the request of, and in accordance with the wishes of all of the parties to these particular suits. This receivership has continued ever since (nevertheless the receiver's salary was reduced to a care-taker's salary many months ago), but unfortunately, owing to short crops in that vicinity and to many other annoying, unfortunate, and unavoidable causes, resulted in a loss of about $17,000, some of which is represented by outstanding receiver's certificates, and all of which debt is a first lien upon all the rights of the Central Altagracia, Incorporated, in and to the sugar plant and premises about which we are speaking.

The record in the two causes mentioned in the caption has

grown quite large, and during the continuance of this receivership the court called all of the counsel in said consolidated suits, as well as counsel in several other suits concerning the property, together, and made strenuous efforts to bring this unfortunate litigation to some sort of a satisfactory conclusion. These meetings were held both at San Juan and Mayaguez. At one time the court made an effort, and expressed its willingness to permit the issuance of receiver's certificates therefor if the interest of the Sanchez de Larragoiti heirs (the original lessor having died) could be purchased for the central at a reasonable price, so that there might be a title in fee in the Central Altagracia, Incorporated, and that the court might thus avoid the continuous applications and efforts of the representatives of that estate to oust everybody connected with this litigation from the premises.

Unfortunately, all this effort of the court, in which most of the counsel joined, proved futile and nothing could be done.

In the files of the consolidated causes mentioned in the caption will be found extensive written memoranda made by the court from time to time, setting out with more or less detail all these different efforts it made with a view to ending this litigation. Finally, in the latter part of July, 1909, the court went to the Mayaguez district and there, after several conferences with counsel in all the suits connected with this litigation, passed upon pending demurrers, etc., with a view to raising the proper issue so that the rights of the parties might be settled.

For a time this action of the court appeared to meet the approval of all counsel concerned, and the bills or petitions in both suits were amended and cross-bills filed so that we could easily see the real issue between all the parties connected with the suits

Valdes v. Central Altagracia.

mentioned in the caption. See the two statements made and signed by the court and placed in the files setting out these facts under date of July 21, and 28, 1909. However, after this action on the part of the court, the Central Altagracia, by one of its solicitors, N. B. K. Pettingill, under date of July 27th, filed his own affidavit claiming that he could not safely go to trial because of the necessity for taking depositions of several witnesses whose names were set out in the affidavit, and who lived in New York and elsewhere in the States, and attempting also to set out what he expected to prove by such witnesses, and stating that he withdrew any offer or intimation he may have theretofore made that he would immediately proceed with the trial. However, all other counsel connected with the matter being present, and the day having arrived when the trial on the merits was to proceed, and the court, after having examined the answers and the crossbills, concluded that there was no necessity for further delay, and that the parties, during the more than a year that the matter had been in the hands of the court and the property in charge of its receiver, had had ample time within which to perfect their pleadings, and that if it in fact thereafter became necessary as shown by the proofs, that the evidence of any of the witnesses whose names were set out in the affidavit should in fact be required, the court would hold the proceedings for such purpose. Thereupon the court, without the intervention of an examiner or master, proceeded for several days both there and later at San Juan, and received evidence on the merits from complainant Valdes and the interveners Nevers & Callaghan, in which hearing both Messrs. Pettingill and Cornwell testified at great length with reference to the rights of the Central Altagracia, Incorporated, although they took no part

as counsel for the central in the proceedings on the trial, save incidentally as such witnesses. On this hearing also all proper exhibits and proofs were received, and the stenographer's notes when afterwards written out made a record of upwards of 200 pages of typewritten matter. Immediately at the end of the hearings, counsel for Valdes and for the interveners Nevers & Callaghan and also for the owner of the fee of the property, the Larragoiti estate, addressed the court orally at great length, and afterwards filed elaborate written arguments and briefs. Counsel for the Central Altagracia, Incorporated, took no part in the oral arguments and filed no brief, but insisted that he was entitled to except to the answers of Nevers & Callaghan and Ramon Valdes, in suit 565, at some future time, which he did under date of September 7th, 1909, but which exceptions, because of the court believing they were introduced for mere purposes of delay and because they were manifestly frivolous in character, were overruled.

For several days last past we have read and examined the evidence thus taken and written out from the stenographer's notes, and have examined the several large exhibits introduced, so that at the present time we have the contentions of the different parties fully before us, and well in mind.

It transpires that several months before any negotiations of any kind or character had taken place between the Central Altagracia and Valdes, the former had obtained a loan of some $25,000 from the firm of Nevers & Callaghan, of New York, promising to deliver the sugar crop of the mill for the ensuing season to repay the same, but failed to do so, and left a large part of said debt due and owing. This firm, according to all we can gather from the record, had no knowledge of the trans-

actions between the central and Valdes, or these so-called sales of the entire property of the concern to him when the same are purported to have been made, or at any time previous to the application for the appointment of the receiver, as none of such instruments were recorded in any registry of property.

We might pause here to say that the registry of property of the district where this land and plant are situated contains no entry concerning the property in question, save that which brings the title into Joaquin Sanchez de Larragoiti, the lessor of Castello. All the other transactions, as heretofore mentioned, it seems, were not, and could not be, registered under the law.

After Nevers & Callaghan's account became due, and on December 12, 1907, they filed a suit (516, Law docket) in this court, on the note that represented it, and thereafter, on May 16th, 1908, recovered judgment for nearly $16,000. Under this judgment, on the 29th of May, 1908, they caused execution to be levied on "all the machinery within the factory building of the said Central Altagracia, Incorporated."

On June 3d, while the contest for the receivership was going on, we made an order suspending this execution of Nevers & Callaghan, thus levied upon the machinery of the sugar mill, until the further order of the court, but providing in the order that such suspension should in no manner affect the lien rights, if any existed by virtue of such execution, in favor of Nevers & Callaghan. This action of Nevers & Callaghan in thus levying their execution is no doubt what precipitated at that particular time this controversy, or at least caused both the other contendants to each apply for a receiver, although the same result would at all events have soon followed.

We have made the foregoing considerable statement of facts connected with this litigation without, as can be seen, showing what the real controversy is.

As we see it, the effort of Central Altagracia through their attorneys, by their action in refusing to take part in the trial on the merits, is to secure delay in the proceedings. We cannot imagine any other object, because from the developments at the trial, it is manifest that every fact that can be known about the matter is well in evidence and that nothing remains that necessitates the taking of the depositions of any of the witnesses in New York or elsewhere, mentioned in the affidavit of July 28th, of Judge Pettingill, solicitor for the Altagracia, which he filed, as stated, at the time he endeavored to avoid proceeding with the trial on the merits.

The effort on the part of Mr. Valdes all through the litigation has been to show,—and he has made strenuous efforts in this behalf,—that he is the absolute owner of all the new machinery put in this plant, and, in addition, the owner of all the lease and machinery rights of the central Altagracia in the sugar plant and land in question, and that he is entitled as against that corporation and all its stockholders and creditors to immediately take possession thereof. Nevers & Callaghan simply claim that in and by their said suit and the levy of their said execution, they have obtained as against the machinery an absolute. lien superior, at least, to Mr. Valdes, or any other creditor, and perhaps even superior to the rights and interest of the estate of the original lessors, Larragoiti. Counsel for Nevers & Callaghan claim that Valdes is nothing but a general creditor, because, as they allege, the Central Altagracia could not sell him any right in the plant or land in question, and because the alleged trans-

Valdes v. Central Altagracia.

fers were not recorded so as to give notice to existing or future creditors, or anybody else, and because a chattel mortgage is unknown to the laws of Porto Rico.

The record contains much evidence tending to show that the main object of the officers of the Central Altagracia and Valdes was that the latter should have security for his advance of money. Neither Mr. Pettingill nor Mr. Cornwell denied that, but on the contrary, during the giving of their evidence several times affirmed it.

As stated, we have examined with great care the contentions of counsel for Valdes and Nevers & Callaghan, and while their laborious efforts are commended for industry, their arguments in many instances tend to carry us away from the real issue. And therefore we think we can settle this unfortunate matter by confining ourselves to the triangular controversy that is before us, without affecting the alleged or real rights or interests of others not parties to these consolidated suits.

We are unhesitatingly of the opinion that the entire matter between the Central Altagracia and Mr. Valdes, no matter what they may call it in the instruments executed between them, was and is, as contended by the central, a loan of money for which security was intended to be given. As between the parties, of course, the instruments they made would ordinarily be binding, but in a suit in equity like this, where its designation as an outright sale is attacked, the court will look behind the face of the instruments to ascertain what the transaction really is. See our opinion in American Colonial Bank v. Cabrera, 3 Porto Rico Fed. Rep. 14, and cases cited.

It is therefore our opinion that the transaction as between those two parties is an equitable mortgage or lien, and that be-

Valdes v. Central Altagracia.

cause of the breach of the conditions of it, Valdes is entitled to have it foreclosed. We think though, that this equitable mortgage or lien should be thus secured and guaranteed to him only for the $65,000 and interest mentioned, and that, as to every other advance that he made to the concern, or paid for it, he is but a general creditor. This latter statement of course, does not apply to his stock purchases, because as to those he stands in the same position as any other stockholder, and his expenditures on that account are probably a complete loss.

We also hold that as to all of the accounts, promissory notes, claims, and debts which he assumed or paid for the concern, he is entitled to come in only as a general creditor therefor, and only for the actual amounts, plus interest, which he paid therefor as set out in the notes purchased, or at 6% per annum on claims or debts where the interest is not mentioned, and that he is not entitled to claim the face value thereof against the central, because at the time he made such purchases or so guaranteed such debts, he was both a stockholder and an officer of the corporation itself, and it is fundamental in law that no person occupying any such fiduciary relation to a corporation, can at such time purchase claims or debts against it at a discount, without giving the concern, whose officer he is, the benefit of such discount. See our opinion in New Colonial Co. v. Canovanas Sugar Factory, 2 Porto Rico Fed. Rep. 195, and cases cited, where we went fully into the law on this question.

The next proposition, as to what the relative situation as between this equitable lien or mortgage of Valdes on the one hand, and the execution of Nevers & Callaghan on the other is, is not so easy,—but on the whole, under the rule that the law favors the diligent, and that the levying of an execution fixes a plain-

Valdes v. Central Altagracia.

tiff's rights in the absence of superior rights in others, we feel bound to hold, and do hold, that Nevers & Callaghan's lien is superior to that of Valdes. It is our opinion that any creditor of this corporation who secured a judgment and a levy upon any of the property rights of the Central Altagracia, previous to June 2d, 1908, when Valdes applied for a receiver to take charge of it, unquestionably both at law and in equity has a superior right to Mr. Valdes,—and this, because of the peculiar situation of the law in Porto Rico. A chattel mortgage is unknown to the jurisdiction, and no record was made or could be made, and so far as we know, no creditor knew anything about Mr. Valdes' alleged rights previous to his application for a receiver, when he for the first time produced his alleged deed and sued to eject everybody from the property in question. See suit No. 563, law docket this district. The fact that he, months previous, took possession of the plant and managed it, does not change the situation, because he took possession as president of the company, and therefore permitted the whole world to believe that it was still the property of the Central Altagracia, Incorporated. From the moment that he filed his suit No. 563 aforesaid, and his bill in suit 564 of the caption, his situation was, in our opinion, different, and from that moment his lien, which we hold to exist, took effect as against nondiligent creditors who had obtained neither judgments nor liens previous to that time.

We are not inclined to give ear to the oft-repeated statement of counsel for Nevers & Callaghan, that Mr. Valdes' action all through this matter amounted to a fraud in law upon all the creditors of the main concern, because the central itself, through meetings of its stockholders, authorized the transaction with

Valdes v. Central Altagracia.

him, and the officers of the concern importuned and implored him to save them in their financial stress. Further, the evidence clearly shows that Mr. Valdes very reluctantly advanced money to the concern at all, and did so largely as matter of friendship for some of the officers of the corporation. It is fully in evidence that he performed a large amount of services for which the $500 in the way of salary he received has but illy paid him, and, of course, the large amount of money he spent for the purchase of stock, is, as stated, under the circumstances probably a complete loss. Further, his action in spending a large amount of money over and above his mortgage lien, in paying for the installing of the machinery, and in silencing outside threatening creditors by purchasing their claims and accounts, is ample evidence that, instead of being an enemy with ulterior designs he was at that time the financial friend of the concern. He would probably now willingly make a large sacrifice and discount on his claim if he could secure his money, and have done with it all; in fact he so stated several times while testifying. He is probably the largest general creditor outside of what we are here holding that he has an equitable mortgage lien for. It is our opinion, therefore, that notwithstanding the unfortunate situation, he is entitled to the thanks rather than to the censure of at least the officers of the corporation.

We do not desire that anything said in this memorandum of our views should be construed as any reflection upon the officers of the Central Altagracia, Incorporated. On the contrary, we think they have shown their good faith because, if our information is right, they have invested their all in the enterprise, and have perhaps lost it. They did this without taking to themselves any security for their own protection, and therefore share the

Valdes v. Central Altagracia.

same financial fate as other stockholders. In addition to this they have probably lost their years of hard work in and about the effort to make the enterprise a success. In truth, it can be said that the failure of the concern cannot be ascribed to the individuals connected with it. True incompatibility of tempers between the officers and some stockholders had its effect, but droughts and failure of crops, as well as the unfortunate failure of Ceballos & Company, and above all, the sudden erection of competitive enterprises more than anything else tended to this unfortunate result.

We therefore find and hold that the equitable mortgage and lien which Mr. Valdes is entitled to upon all of the rights of the Altagracia, in and to the said lease, plant, land, and property of the Central Altagracia should be foreclosed, and in default of the payment to him of the amount due as here found, the property should be sold according to law at as short a day as may be, in order to enforce such payment, and that at such sale Mr. Valdes shall have the right to be a bidder on account of his said lien to the extent of the principal sum of $65,000, plus interest as mentioned in the instruments between the parties, to the date of the sale.

We further find and hold that out of the proceeds of such sale the claims shall be paid in full in the order following:

1. All outstanding receiver's certificates, taxes, accounts, and other debts of the receivership, which shall include the sum of $500 as overdue wages to Benjamin S. Cornwell, which, in the opinion of the court, is a preferred claim, and ought to have been paid at the incipiency of the receivership.

2. The claim in full of Nevers & Callaghan to the date of the sale.

3. The lien aforesaid of Mr. Valdes, and

4. All other creditors of the concern as shown in the receiver's report filed under date of July 27th, 1909,—such creditors, including Mr. Valdes, to be paid pro rata in so far as may be.

Therefore, a decree will be immediately prepared by counsel for said Valdes, making the findings of fact and law herein indicated, foreclosing Mr. Valdes' lien and in default of payment within a short day, providing for the sale as herein set forth, and further providing, that at the time of the sale,—in case Mr. Valdes is the purchaser,—the amount of the receivership debts, and of the entire cost of the sale, and court costs, and the debt of Nevers & Callaghan, shall be paid into the registry of the court.

The cause is retained for all necessary purposes.